IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| TAMEEM WADOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:25-cv-1512 (RDA/LRV) |
| | ) | |
| AT&T TECHNICAL SERVICES Co., INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion to Compel Arbitration (Dkt. 15) as well as Plaintiff Tameem Wadodd's *pro se* Motion to Deny Enforcement of Arbitration and Motion to Leave to File (Dkts. 13, 22). The Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motions together with Defendant's Memorandum in Support (Dkt. 15), Plaintiff's Proposed Amended Complaint (Dkt. 22-1), Plaintiff's Opposition (Dkt. 20), Defendant's Opposition (Dkt. 24), Defendant's Reply (Dkt. 21), Plaintiff's Notice (Dkt. 23), and Plaintiff's Reply (Dkt. 25) the Court GRANTS Defendant's Motion and DENIES Plaintiff's Motions for the following reasons.

I. BACKGROUND

A. Factual Background

Plaintiff has filed a bare-bones Complaint which asserts that he began working for Defendant in August 2022 as a Lead Network Design Engineer and later as an Architecture Engineer. Dkt. 1 ¶ 7. In June 2023, Plaintiff asserts that he was inappropriately "questioned by supervisors about his religion and national origin" and that thereafter he "experienced disparate

treatment, reassignment, exclusion from projects, downgraded evaluations, and eventual termination." *Id.* ¶ 8. Plaintiff asserts that he filed complaints with human resources in August 2024 and that "retaliation escalated, resulting in denial of medical leave, placement on unjustified performance plans and termination as of February 2025." *Id.* ¶ 9. Plaintiff alleges that, after termination, Plaintiff's security clearance was flagged and that he was defamed. *Id.* ¶ 10. He further asserts that Plaintiff withheld $25,114.35 in retirement. *Id.* ¶ 11. Plaintiff asserts claims of discrimination, retaliation, age discrimination, defamation, and interference with prospective employment. *Id.* He asserts that, on July 3, 2025, the Equal Employment Opportunity Commission issued Plaintiff a notice of his right to sue. *Id.* ¶¶ 5-6. Plaintiff alleges no further facts.

In the Declaration of Martin Paratore (Dkt. 16-1), he asserts that from June 2012 through December 2023 Defendant uses a platform known as "CareerPath" to manage its applications and onboarding processes. *Id.* ¶ 7. Paratore avers that through CareerPath applicants use confidential, password-protected accounts to complete the application documents. *Id.* ¶ 8. He further asserts that, since 2012, all candidates selected for management positions have received a document entitled "Management Arbitration Agreement" or "MAA." *Id.* ¶ 9. Candidates are required to review and acknowledge the MAA as a mandatory part of the pre-onboarding process. *Id.* To complete the MAA, the candidate (after entering CareerPath using his private account) must review the document and electronically sign it. *Id.* ¶ 10. Defendant then maintains that signed document in CareerPath as part of its ordinary course of business and Paratore has access to it as part of his job duties. *Id.* ¶ 11. Paratore states that, on September 15, 2025, he accessed the candidate profile for Plaintiff in CareerPath system and saw that Plaintiff applied to an Engineering position in June 2022. *Id.* ¶ 12. Paratore then reviewed the records and determined that Plaintiff

was extended an offer of employment June 23, 2022, and that CareerPath maintained a copy of the MAA electronically signed by Wadood on June 25, 2022. *Id.* ¶¶ 13-14. Pursuant to the MAA, Plaintiff agreed that:

> You and the AT&T company that employs you ("the Company") mutually agree to final and binding arbitration (except as provided below) of all claims (common law or statutory) that the Company might have against you, or that you might have against (1) the Company, (2) the Company's parent, subsidiary and affiliated entities, (3) the directors, employees, or agents of any of those companies (in their official capacity or otherwise), and (4) the successors and assigns of any of them.

Dkt. 16-1 at 9. The only exceptions to the arbitration provisions are: (i) sexual assault or sexual harassment claims; (ii) claims for workers' compensation; (iii) claims under the Employee Retirement Income Security Act ("ERISA"); and (iv) disputes that may not be subject to pre-dispute arbitration. *Id.*

B. Procedural Background

On September 10, 2025, Plaintiff filed his Complaint. Dkt. 1. On October 3, 2025, Defendant filed its Answer, which identified the MAA as a possible defense. Dkt. 8.

On October 31, 2025, Plaintiff filed his Motion to Deny Enforcement. Dkt. 13. On November 14, 2025, Defendant filed its Motion to Compel. On November 20, 2025, Plaintiff filed its Opposition. Dkt. 20. On November 25, 2025, Plaintiff filed his Opposition. Dkt. 21.

On December 3, 2025, Plaintiff filed his Motion to Amend. Dkt. 22. On December 15, 2025, Defendant filed its Opposition. Dkt. 24. On December 29, 2025, Plaintiff filed his Reply. Dkt. 25.[1]

---

[1] The Court recognizes that the parties' motions have been pending for a longer period than is ordinarily expected in this District. The Court notes that this Division has been inundated with hundreds of habeas applications each of which requires expeditious review and each of which involves an individual in custody who desires release. Indeed, to date, more than *3,000* civil cases have been filed in the Alexandria Division alone. Nor does the Court's regular civil and criminal dockets stop progressing forward to take account of this new influx of cases and this District Judge

## II. STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") stipulates that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The effect of [this] section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (alterations added). Likewise, the FAA was passed "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Rader v. Nw. Fed. Credit Union*, 2024 WL 388097, at *4 (E.D. Va. Feb. 1, 2024) (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000)).

## III. ANALYSIS

The Court will first address the motions related to arbitration. Dkts. 13, 15. The Court will then turn to whether Plaintiff should be permitted to amend his complaint. Dkt. 22.

### A. Whether This Case Should be Arbitrated

A litigant can compel arbitration under the FAA by showing: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of a party to arbitrate the dispute. *See Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002). Further, "a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84,

---

has personally presided over eight criminal trials in the last year. The Court has addressed this case in due course.

(2002). Courts should apply "ordinary state-law principles that govern the formation of contracts" when deciding whether an arbitration agreement exists between the parties. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Therefore, the threshold question a court must answer when seeking to compel arbitration is whether an arbitration agreement exists between the parties as a matter of the relevant state's contract law. *Rogers v. Tug Hill Operating, LLC, 76* F.4th 279, 286-87 (4th Cir. 2023). If the Court determines that an arbitration agreement exists between the parties, then "it is the language of the contract that defines the scope of disputes subject to arbitration." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). The only element truly in dispute is whether there is valid arbitration agreement.

The existence of a valid arbitration agreement is a matter of state contract law. *See Ghouri v. AmSher Collection Servs. Inc.*, 2022 WL 11964565, at *4 (E.D. Va. Oct. 19, 2022). "Virginia law requires offer, acceptance, and consideration for the formation of a contract." *Bryce*, 741 F. Supp. 3d at 392. Here, the arbitration agreement was a condition as part of Plaintiff's offer of employment, and he manifested his signature electronically to accept. Dkt. 16-1. An arbitration agreement between employer and employee is not an unenforceable contract of adhesion merely because the employer requires the employee to agree to arbitrate employment-related disputes as a condition of employment. *See, e.g., Bennett v. Dillard's, Inc.*, 849 F.Supp.2d 616, 620 (E.D.Va. 2011) (finding that an arbitration agreement between employee and employer was not a contract of adhesion where the employee "had the right to work elsewhere, rather than accept [the employer's] terms of employment"); *Senture, LLC v. Dietrich*, 575 F.Supp.2d 724, 727 n. 1 (E.D. Va. 2008) ("If an employee has the freedom to consider employment elsewhere and is not bound to continue working for his current employer, an employment agreement will not be considered an adhesion contract."). Moreover, to the extent that Plaintiff is suggesting that his signature is not

valid because it is an electronic signature, he is incorrect—electronic signatures cannot be excluded solely because they are in electronic form. *See* Va. Code § 59.1-491. And judges in this District have recognized that "[a] contract is no less a contract simply because it is entered into via a computer." *Hosseini v. Upstart Network, Inc.*, 2020 WL 573126, at *6 (E.D. Va. Feb. 5, 2020) (citing *A. V. v. iParadigms, LLC*, 544 F. Supp. 2d 473, 480 (E.D. Va. 2008)). Finally, the Supreme Court has "recognized that federal statutory claims can be appropriately resolved through arbitration, and [has] enforced agreements to arbitrate that involve such claims," *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000), including statutory discrimination claims, *see Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (ADEA claims); *see also Ashford v. PricewaterhouseCoopers LLP*, 954 F.3d 678 (4th Cir. 2020) (reversing a district court's denial of a motion to compel arbitration of plaintiff's Title VII claims). Accordingly, the MAA is valid and enforceable.[2]

If an agreement to arbitrate exists between the parties, whether a dispute is covered by the agreement is "dependent on an analysis of the agreement's language." *Bryce*, 741 F. Supp. 3d at 392 (citing *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002)). Here, the MAA broadly applies to "all claims (common law or statutory) that the Company might have against [Wadood] or that [Wadood] might have against . . . the Company" and "the Company's parent, subsidiary and affiliated entities," with limited exceptions that do not apply here. Dkt. 16-1 at 9. The Fourth

[2] Plaintiff's other arguments seeking to deny enforcement are neither developed nor persuasive. Dkt. 20. In particular, Plaintiff had an opportunity to consult with counsel. He was required to complete the MAA by a "due date" of June 29, 2022. Dkt. 16-1 at ¶ 15. Thus, Plaintiff had approximately five days to discuss the MAA with an attorney. Moreover, the MAA expressly states, under the boldface heading "Right to Discuss with Private Legal Counsel" and immediately above Wadood's electronic signature: "You acknowledge that you have been given the opportunity to discuss this Agreement with your private legal counsel and have taken that opportunity, if you wish to do so." Dkt. 16-1 at 9.

Circuit considers these types of "broadly-worded arbitration clause[s]" enforceable, and extends their application to disputes that arise not only under the governing agreement, but also claims that bear a "significant relationship" to the contract containing the arbitration clause. *See Hawkins v. Fishbeck*, 301 F. Supp. 3d 650, 656–57 (W.D. Va. 2017) (citing *Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001) (collecting cases)). Here, although the MAA arose in the context of Plaintiff's employment, it is not limited to the employment context; instead, the MAA applies to <u>*all claims*</u> that Plaintiff might have against Defendant. Dkt. 16-1 at 9. Thus, by its plain language the MAA applies to each of Plaintiff's claims against Defendant – the other party to the agreement. *See, e.g, Montague v. Credit Acceptance Corp.*, 2018 WL 11224376, at *4 (E.D. Va. Apr. 25, 2018), *report and recommendation adopted,* 2018 WL 4999966 (E.D. Va. June 6, 2018) ("She alleges defamation and negligence, both tort claims under Virginia law. . . . These claims constitute disputes under the Contract that the parties agreed to arbitrate.").

Plaintiff seeks to avoid this result by claiming that he asserts a claim under ERISA. Dkt. 20 at 2. Not so. The Complaint contains no such claim. Dkt. 1 at 2 (listing claims). Nor does the Complaint contain sufficient allegations to state an ERISA claim. *See Obazee v. Wells Fargo Advisors, LLC*, 2010 WL 3522091, at *4–5 (E.D. Va. Sept. 3, 2010) (granting motion to dismiss pro se plaintiff's § 510 ERISA claim where plaintiff failed to allege that he was discriminated against for exercising his rights under any employee benefit plan, that he suffered adverse employment action taken with specific intent to deprive him of certain benefits, and that benefits sought were covered by ERISA). Accordingly, the Court will grant the Motion to Compel and deny the Motion to Deny.

B. Whether Plaintiff Should be Permitted to Amend

Perhaps recognizing that arbitration was likely, Plaintiff seeks to amend his sparse Complaint. Dkt. 22-1. Under Rule 15 of the Federal Rules of Civil Procedure, courts ordinarily "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, "[w]hile [courts] generally encourage amendment, there are, of course, circumstances that justify denying a plaintiff the opportunity to try again." *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022). The Fourth Circuit has identified three grounds for denying leave to amend: "prejudice to the opposing party, bad faith, or where the amendment would be futile." *Nicholson*, 42 F.4th at 197 (citing *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)). And "[a]mendments are futile when 'the proposed amendments could not withstand a motion to dismiss.'" *Sullivan v. City of Frederick*, 738 F. App'x 198, 200 (4th Cir. 2018) (quoting *Perkins v. United States*, 55 F.3d 910, 914 (4th Cir. 1995)). It is at the Court's discretion whether to grant or deny leave to amend a complaint. *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008).

Here, the proposed Amended Complaint adds an ERISA claim – a claim specifically excluded from the arbitration clause. *Contrast* Dkt. 16-1 at 9 *with* Dkt. 22-1. Courts reject amendment where there is a purpose of avoiding arbitration. *See Newman v. Ambry Genetics Corp.*, 2024 WL 4553224, at *4–5 (D.S.C. Oct. 23, 2024) (denying plaintiff's motion for leave to amend his complaint because he sought leave to avoid arbitration). The allegations that Plaintiff seeks to add were in his possession and are not newly discovered. Rather, they appear to be a response to Defendant's Motion to Compel. Moreover, despite notice regarding the nature of the ERISA claim in the Defendant's briefing on the Motion to Compel, Plaintiff's asserted ERISA claim is not plausible and is conclusory. In short, Plaintiff asserts: (i) he participated in

Defendant's 401(k) plan; (ii) he made contributions; (iii) "AT&T engaged in adverse actions timed to interfere with Plaintiffs attainment of benefits"; (iv) he was the subject of "[f]orced transfers, biased evaluations, and retaliatory documentation occurred near vesting milestones"; (v) Defendant failed to provide "accurate information regarding Plaintiffs retirement benefits upon separation"; and (vi) Defendant "acted with specific intent to interfere with his ERISA-protected benefits." Dkt. 22-1 ¶¶ 92-97. These vague and conclusory allegations are not sufficient to meet Plaintiff's burden under *Twombly* and *Iqbal* or to state a plausible claim under ERISA. *See Iqbal*, 556 U.S. at 679 (holding "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'"); *Obazee*, 2010 WL 3522091, at *4–5 (granting motion to dismiss pro se plaintiff's § 510 ERISA claim). Accordingly, the Motion to Amend will be denied.

## IV. CONCLUSION

In conclusion, the MAA is a valid contract and the disputes at issue here are subject to arbitration. Moreover, Plaintiff will not be permitted to amend the Complaint to avoid arbitration.

Accordingly, it is hereby ORDERED that Motion to Deny Enforcement of Arbitration Agreement (Dkt. 13) is DENIED; and it is

FURTHER ORDERED that the Motion to Compel Arbitration (Dkt. 15) is GRANTED; and it is

FURTHER ORDERED that the Motion for Leave (Dkt. 22) is DENIED; and it is

FURTHER ORDERED that that the parties are DIRECTED to submit their claims to binding arbitration in accordance with the MAA; and it is

FURTHER ORDERED this matter is STAYED pending arbitration of these claims and the Clerk of the Court is DIRECTED to place this matter among the inactive causes; and it is

FURTHER ORDERED that the parties are DIRECTED to file a status with the Court within FOURTEEN (14) DAYS of the issuance of an arbitration decision so that this Court can take further action or close this case.

To appeal this Order, Plaintiff must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order that Plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to all counsel of record.

IT IS SO ORDERED.

Alexandria, Virginia
September 17, 2026

/s/

Rossie D. Alston, Jr.
United States District Judge